UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ESTATE OF CHRISTOPHER MORELAND, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) NO. 3:99-cv-607PS ) |
| JOSEPH SPEYBROECK, *et al.*, | ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motions for Fees and Costs [Docs. 272, 273] (hereinafter occasionally "first request," "first petition," and "first motion") and Plaintiffs' Supplemental Motion for Fees and Costs [Doc. 447]. In an attempt to simplify the complicated fees and costs analysis we must undertake, this order deals exclusively with attorneys fees. The Court shall issue a separate order address the Plaintiffs' cost request also contained within the first and subsequent petitions.

**I.  BACKGROUND**

This is the final round in the protracted litigation surrounding the death of Christopher Moreland while under the watch of Defendants Erich Dieter and Michael Sawdon (among others) in the St. Joseph County Jail. The facts surrounding Moreland's detention and death need not be repeated yet again as they are well-documented in this case. *See Estate of Moreland v. Dieter*, 395 F. 3d 747 (7th Cir. 2005). However, a review of the procedural and appellate history of this case is necessary for the resolution of the pending motions for attorneys fees.

**A.     Procedural History**

The Plaintiffs, relatives of Christopher Moreland, originally brought their complaint in October of 1999 alleging violations of 42 U.S.C. § 1983 against Joseph Speybroeck, the then Sheriff of St. Joseph County; Paul Moffa, Erich Dieter, and Michael Sawdon – each one a St.

Joseph County police officer; the St. Joseph County Sheriff's Police Department; various St. Joseph County Commissioners and County Council members; and various medical providers. The majority of the defendants ultimately settled or were voluntarily dismissed. The defendants relevant to this analysis include Dieter, Sawdon, Moffa, and the Sheriff's Department through the official capacity lawsuit filed against Sheriff Speybroeck. .

Plaintiffs' claims against Sawdon, Dieter, and Moffa were relatively similar. They alleged that each officer used excessive force on Moreland while he was in custody at the St. Joseph County Jail resulting in Moreland's death. As to Sheriff Speybroeck, the Plaintiffs alleged that the Sheriff was deliberately indifferent to Moreland's safety at the jail. Specifically, they argued that there were on-going violations of various jail policies that were essentially condoned by the Sheriff's Department. On March 20, 2002, Judge Sharp granted summary judgment as to the Sheriff's Department and to Sheriff Speybroeck in his official capacity.

On April 21, 2002, the case proceeded to jury trial before Judge Sharp against Moffa, Dieter, and Sawdon. Following 12 days of jury deliberation, the jury returned verdicts against Dieter and Sawdon. The jury reported that it was deadlocked as to the claims against Moffa and Judge Sharp granted a mistrial. The jury then considered the issue of damages against Sawdon and Dieter. Following two days of testimony and deliberations, the jury returned a verdict against Dieter and Sawdon in the amount of $29 million compensatory damages, $12.5 million in punitive damages against Dieter, and $15 million in punitive damages against Sawdon for a total sum of $56.5 million.

On June 24, 2003, the matter was assigned to this Court for all further proceedings, including the Moffa retrial. The Court held its final pretrial conference on August 8, 2003 and commenced the Moffa re-trial on September 9, 2003. The jury returned a verdict in favor of Moffa and against the Plaintiffs, and the clerk entered judgment on September 18, 2003. Plaintiffs a filed a motion for a new trial but that was denied.

Despite the large number of claims and defendants in this matter, there are only three claims that are particularly relevant to our review of the Plaintiffs' fee petition. These include: 1) the Plaintiffs' claims against Dieter and Sawdon; 2) the Plaintiffs' claims against Moffa; and 3) the Plaintiffs' claims against the Sheriff's Department and Sheriff Speybroeck in his official capacity..

**B.    Appellate Proceedings**

After the Moffa re-trial was concluded and all motions ruled on, Defendants Dieter and Sawdon appealed the judgment against them alleging evidentiary errors and also challenging the size of the punitive damage awards. In addition, Plaintiffs appealed Judge Sharp's grant of summary judgment to Sheriff Speybroeck arguing that they had created a question of fact as to whether there were unconstitutional practices or customs within the St. Joseph County Jail. Ultimately, the Seventh Circuit upheld the verdicts against Dieter and Sawdon and affirmed the grant of summary judgment in favor of Sheriff Speybroeck. *Estate of Moreland v. Dieter*, 395 F. 3d 747 (7th Cir. 2005).

**C.    Fee Petitions**

The Plaintiffs filed their original fee petitions following the verdicts against Defendants Dieter and Sawdon. Because appellate proceedings were not complete at that time, those petitions were premature; we allowed the Plaintiffs to renew those petitions upon completion of the entire matter. In their initial petition, [Docs. 273], filed in June 2002, the Plaintiffs first requested attorneys fees in the amount of 1/3 of the total judgment ($18,831,450.00). In the alternative, they requested $549,245.00 in fees broken out as follows:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Geoffrey Fieger | $600 | 288.65 | $173,190.00 |
| Jeremiah Kenney | $600 | 111.3 | $66,780.00 |

3

| Sean Drew | $350 | 806.75 | $282,362.50 |
| Steve Hnat (consultant) | $100 | 178 | $17,800.00 |
| Tania Kushner (paralegal) | $50 | 182.25 | $9,112.50 |
| **TOTAL** | | | **$549,245.00** |

These fees represent time spent by all attorneys who currently represent the Plaintiffs in this matter. Plaintiffs initially contacted Atty. Drew in 1997. He handled their claims from the initial investigation through the present. In addition, the Plaintiffs engaged the firm of Fieger Fieger Kenney and Johnson (FFKJ) as co-counsel in 2001. Attys. Fieger and Drew represented Plaintiffs at the original trial as well as at the Moffa retrial. Atty. Kenney primarily represented the Plaintiffs during pretrial proceedings.

In addition, Atty. Drew filed a fee petition on behalf of Atty. Michael Marrs. [Doc. 272]. Atty. Marrs was Atty. Drew's co-counsel in this matter from the early stages of investigation through April 30, 2001 when Atty. Marrs relocated to Chicago, IL and withdrew from the case. Atty. Marrs requests $47,850.00 in fees.

On February 28, 2005, the Plaintiffs filed their supplemental fee petitions to include attorneys fees from May 10, 2002 through February 28, 2005. Specifically, they request an additional $429,450.00 in fees for Atty. Drew and an additional $119,055.00 in fees for attorneys associated with FFKJ. As to FFKJ's fees, they include time expended by Atty. Fieger as well as an individual identified only as "VSV."

In sum, Plaintiffs' total request for attorneys fees is $1,145,600.00.

## II. ANALYSIS

Federal courts normally do not order one party in a case to pay another's attorneys fees unless authorized by statute. In this case, however, the Civil Rights Attorneys Fees Award Act,

42 U.S.C. § 1988, authorizes a court, in its discretion, to award attorneys' fees to the prevailing party in any action or proceeding to enforce one of a number of civil rights statutes including 42 U.S.C. § 1983. To recover fees under § 1988, a plaintiff must first be a prevailing party. A plaintiff may "prevail" if "they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit." *Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir. 1992). Thus, a plaintiff need not prevail on every claim or even his central claim; as long as the party has "changed the legal relationship between it and the defendant" he is a prevailing party. *Id*.

In this case, the Plaintiffs clearly prevailed on their claims against Dieter and Sawdon, and the defendants do not claim otherwise. Thus, they are prevailing parties entitled to attorneys fees under § 1988. However, Dieter and Sawdon raise two primary objections to the plaintiffs attorneys' fees request. First, they object to the rates charged by Attys. Fieger, Drew, and Kenney arguing that they are not supported nor are they the prevailing market rates in the relevant community. Second, they object to any award of fees for the unsuccessful retrial of defendant Moffa as well as the unsuccessful appeal of the grant of summary judgment in favor of former Sheriff Speybroeck. We address each of the Defendants' objections in our analysis.

As an initial matter, we note that the law does not provide for the requested fee award of $18,831,450.00, 1/3 of the value of the judgment. Indeed, as discussed below and set forth in *Hensley v. Eckhart*, 461 U.S. 424 (1983), the proper method for calculating a fee award is to determine a lodestar amount and then adjust that amount as necessary to fit the circumstances of the particular case. This is true even in cases where the Plaintiff and his attorney have contracted solely on a contingent fee basis. *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) ("[I]n construing §1988 we have generally turned away from the contingent-fee model to the lodestar model of hours reasonably expended compensated at reasonable rates."). Accordingly, we deny the Plaintiffs' request for a fee award of 1/3 of the final judgment.

5

We turn first to the Plaintiffs' alternate request and begin by calculating the "lodestar" amount. We obtain a lodestar by multiplying the number of hours an attorney reasonably worked on the litigation times his reasonable hourly rate. *Mathur v. Bd. of Trustee of So. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). Once we have determined a lodestar amount, we apply the so-called *Hensley* factors to increase or decrease the fee award. The *Hensley* Factors include:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or th circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.

*Borst*, 979 F.2d at 516 n.2. Of these factors,"the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is . . . critical to the determination of the size of a reasonable fee." *Linda T v. Rice St. Joseph Area Sch. Dist.*, 2005 WL 1812939 at *3  (7th Cir. Aug. 2, 2005) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) (emphasis in original). Thus, "the most critical factor" in determining the fee award "is the degree of success obtained." *Linda T*, 2005 WL 1812939 at *3.

A.      **Hourly Rate**

In general, we prefer to compensate attorneys by their standard hourly rate. *Mathur* 317 F.3d at 743. Indeed, an "attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Id*. at 742 (internal quotations omitted). However, the burden is on the party seeking the fee to substantiate the requested rate, *Borst* 979 F.2d at 515 (7th Cir. 1992), and "when an attorney is unable to provide evidence of her actual billing rates [the district court should] look to other evidence, including rates similar experienced attorneys in the community charge paying clients for similar work." *Mathur*, 317 F.3d at 743.

Here, the Plaintiffs have requested the following as their hourly rates:

| Attorney | Requested Rate |
|---|---|
| Geoffrey Fieger | $600.00 per hour |
| Jeremiah Kenney | $600.00 per hour |
| Sean Drew | $350.00 per hour |
| Michael Marrs | $500.00 per hour |
| "VSV" | $350.00 per hour |
| Steve Hnat (consultant) | $100.00 per hour |
| Tania Kushner (paralegal) | $50.00 per hour |

The Court found the initial bases for these rates – namely, the suggestion by the attorneys themselves that the rates were reasonable – to be insufficient.[1] Therefore, we ordered the parties

---

[1] We recognize that in that original submission, Atty. Fieger pointed the Court to two decisions in Wayne County, Michigan in which that circuit court awarded fees to Atty. Fieger at the rate of $600.00 per hour in the case of *Porter v. Northeast Guidance Center, Inc.*, Case No. 96-602956-NI, Wayne Co. Cir. Ct. 1999. (Plaintiff's Motion at Ex. D). While this is some evidence of what a reasonable rate for Mr. Feiger is, the Court believes that Atty. Fieger's previous successful award of $600.00 per hour in the Detroit area, does not have much bearing on the value of his services in this open market. We further note that none of the additional evidence submitted pursuant to Court order support a finding of $600.00 per hour – regardless of the relevant market.

7

to submit additional evidence of a reasonable hourly rate. Plaintiffs attorneys submitted a number of documents including affidavits from attorneys in Chicago and Southwest Michigan attesting to hourly rates as listed below:

| Attorney | Location | Hourly Rate |
| --- | --- | --- |
| Peter R. Coladarci | Chicago, IL | $350.00 |
| Alan J. Toback | Chicago, IL | $375.00 – $400.00 per hour |
| Peter W. Smith[2] | SW Michicgan | $300.00 per hour |
| Geoffrey N. Fieger[3] | Southfield, Michigan | $300.00 per hour |
| David W. Christiansen[4] | Niles, Michigan | $450.00 per hour |

We note that none of the Plaintiffs' affidavits address the market rate in Northern Indiana. We do, however, find that the affidavits of attorneys practicing in the Chicago area are instructive as Chicago-based attorneys frequently practice in this District. Moreover, the Chicago attorneys appear to possess the same type of practice – primarily injury-based plaintiffs work — as the Plaintiffs' attorneys in this matter. We accept the range of $300 to $400 per hour that was provided in these affidavits as reasonable for practice in this District.

---

[2] Atty. Smith submitted this affidavit in connection with Atty. Drew's request for fees in a medical malpractice case in November 2004. In the affidavit, he opined that $300.00 per hour was a reasonable rate for Atty. Drew to recover in a complex medical malpractice case.

[3] Atty. Fieger also submitted his affidavit in connection with Atty. Drew's request for fees in a medical malpractice case in November 2004. In the affidavit, he opined that $300.00 per hour was a reasonable rate for Atty. Drew to recover in a complex medical malpractice case.

[4] Atty. Christensen submitted his affidavit in connection with Atty. Marrs's request for fees in the same action. Atty. Christensen opined that $450.00 per hour was a reasonable rate for Atty. Marrs to recover in a complex medical malpractice case.

We emphasize that we only come to this conclusion because Dieter and Sawdon presented *no evidence whatsoever* – despite being ordered by the Court to provide such evidence – as to the reasonable market rate is in northern Indiana. In their objections to both the original and supplemental petitions, Dieter and Sawdon suggest that we award fees in the range of $125 to $250 per hour.  However, they have not submitted any evidence that $125 to $250 is a reasonable fee in this market.  Accordingly, in the absence of evidence to the contrary, we accept a range of $300-$400 per hour as reasonable based on the affidavits of attorneys with similar experience, skill, and reputation as Attys. Fieger, Kenney, Drew, and Marrs in the Chicago market.

### 1.  Atty. Geoffrey N. Fieger

We find that Atty. Fieger is entitled to a rate of $400.00 per hour.  Atty. Fieger is a well-known, highly skilled trial lawyer who could reasonably charge his clients at the top of the fee range provided to the Court.  Again, we recognize that these affidavits speak not to the market rates in northern Indiana, but rather to those rates in Chicago and Southwest Michigan. We emphasize however that Dieter and Sawdon provided no contradictory affidavit evidence despite being ordered to submit their own affidavits.   Atty. Fieger represented the Plaintiffs at the trial stage and obtained for them what can only be described as a stupendous result.  We, therefore, find that $400.00 per hour is a reasonable rate.

### 2.  Atty. Jeremiah J. Kenney

We further find that Atty. Kenney is entitled to a rate of $400.00 per hour.  Little has been provided to the Court to describe Atty. Kenney's background or qualifications.  As a name partner in FFKJ, we can expect that his qualifications are similar to those of Atty. Fieger. Moreover, from the FFKJ billing records, it appears he was primarily responsible for pretrial practice in this matter with little oversight or supervision from Atty. Fieger.   Thus, we find that $400.00 per hour is a reasonable rate for Atty. Kenney.

### 3.  Atty. Sean Drew

We next find that Atty. Drew is entitled to a rate of $350.00 per hour.  Atty. Drew submitted two supporting affidavits made by attorneys practicing in his community who were familiar with Atty. Drew and his level of expertise.  Each of these attorneys opined that they believed that $300 per hour was a reasonable fee for Atty. Drew to recover in a complex medical malpractice action.  Even though those affidavits were made in an earlier case, we have no reason to suspect that the opinions of those affiants would be any different today.  Moreover, we believe that the modest increase of $50 per hour requested by Atty. Drew is reasonable in that it is well within the range of market rates provided by the Plaintiffs.  Moreover, more than a year has passed since the conclusion of the case referenced in the affidavit.   Thus, we find that $350.00 is a reasonable rate for Atty. Drew.

### 4.  Atty. Michael Marrs

We next find that Atty. Marrs in entitled to a rate of $400.00 per hour.  Atty. Marrs was co-counsel to Atty. Drew in the early stages of the investigation and litigation withdrawing in April 2001.  Atty. Drew submitted an affidavit on Atty. Marrs's behalf made by an attorney practicing in Atty. Marrs's community who was familiar with his level of expertise.  That attorney opined that $450.00 per hour was a reasonable rate for Atty. Marrs.  However, we note that $450.00 is above the range for Chicago-area practitioners provided to us by the Plaintiffs themselves.   Accordingly, we adjust Atty. Marrs's rate to reflect the range in this area and adjust his fee to a reasonable rate of $400.00 per hour.

5.     **Atty. "VSV"**

We next find that "VSV" is entitled to a rate of $233 per hour.   The Court first learned of "VSV" in Plaintiffs' supplemental request.   Specifically,  Exhibit D to the supplemental request describes the time spent by individuals associated with FFKJ and identifies the attorney performing each task by his or her initials.  Most of the initials are familiar.  Clearly, for example, "GNF" is Atty. Fieger.  However, Exhibit D also includes time expended by "VSV."

The Plaintiffs did not explain to us who "VSV" is nor did they provide any information regarding his or her position or qualifications.  All we know is that Plaintiffs value "VSV" at a rate of $350.00 per hour.   Our review of the District Court and Seventh Circuit docket sheets are equally unavailing.  The time descriptions in FFKJ's record suggest that "VSV" is an individual who provided legal work on the appellate proceedings including research, drafting and review of appellate briefs.   Given the complete lack of information regarding "VSV" and his or her background, we simply cannot say that $350.00 per hour is a reasonable rate for someone we know nothing about.  We reiterate that the burden of establishing a reasonable rate is on the party making the fee request. *Borst*, 979 F.2d at 516, n. 2.  With respect to "VSV," the Plaintiffs have done nothing to justify this rate.

Nevertheless, "VSV" performed a significant amount of work in the appellate stages of this matter – work which clearly contributed to the Plaintiffs' successful defense of their victory against Defendants Dieter and Sawdon.   Rather than deny the Plaintiffs' any recovery of attorneys fees for work performed by "VSV" we have crafted a reasonable rate by reducing "VSV"'s requested rate by the same percentage as we did to the rate assigned to Attys. Fieger and Kenney.  That is, according to FFKJ, "VSV"'s work was valued at $350 per hour while Attys. Fieger and Kenney's services were valued at $600.00 per hour.  Noting that Attys. Fieger and Kenney could only expect to reasonably charge $400.00 per hour in this market (i.e. 2/3 of their requested rate), then "VSV"'s rate should be similarly reduced.  2/3 of $350 is $233.00.

### 6. Consultant Hnat and Paralegal Kushner

Lastly, we find that consultant Steve Hnat and paralegal Tania Kushner are entitled to rates of $100.00 per hour and $50.00 per hour, respectively. Although the Plaintiffs did not provide affidavit evidence to support these rates, the Defendants did not object to the rates. Moreover, neither of these rates can be viewed as excessive.

### B. Hours Expended

We turn next to the hours expended by the attorneys in this matter. Here, Dieter and Sawdon object to any fees expended by Plaintiffs' counsel in the pursuit of ultimately unsuccessful claims, i.e., the Moffa retrial and the Speybroeck appeal. We conclude the recovery of attorneys' fees for the former is inappropriate but not for the latter.

We may award fees to Plaintiffs only for those hours reasonably expended. "Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM America, Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Moreover, "the hours claimed can be reduced by the number of hours spent litigating on claims on which the party did not succeed to the extent they were distinct from claims on which the party did succeed." *Id*. Indeed, the Supreme Court held that "where a prevailing plaintiff has succeeded on only some of his claims, an award of fees for time expended on unsuccessful claims may not be appropriate." *City of Riverside v. Rivera*, 477 U.S. 561, (1986) (discussing *Hensley*). As the *Hensley* Court further explained:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435.  Indeed, the Seventh Circuit looks to whether the "time spent pursuing an unsuccessful claim . . . also contributed to the success of other claims."  *Jaffe v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998).

There can be no doubt that the claims against Defendants Dieter and Sawdon and the claim against Defendant Moffa involved a common core of facts (the treatment of the deceased at the St. Joseph County Jail by Moffa, Dieter, and Sawdon) and involved similar legal theories.  Indeed, Defendants Dieter and Sawdon do not argue that the time Plaintiffs' counsel spent in preparing and trying the first case where all three defendants – Sawdon, Dieter and Moffa – were present should be excluded from the fee award.  We agree with Defendants Dieter and Sawdon, however, that the retrial of Defendant Moffa, well after the finding of liability and $56 million award against them, is a different kettle of fish.

*Hensley* and *City of Riverside* both speak to situations where related claims were tried at the same time.   Particularly, these decisions focus on the difficulty of separating the time spent in the preparation and trial of related claims when that preparation and trial is concurrent.  *Hensley*, 461 U.S. at 435 ("The time devoted to claims on which plaintiffs did not prevail cannot reasonably be separated from time devoted to claims on which plaintiffs did prevail."); *see also*, *Jaffe*, 142 F. 3d at 414 (discussing *Merriweather v. Family Dollar Stores*, 103 F. 3d 576, 584 (7th Cir. 1996), and noting affirmation of award of attorneys fees on unsuccessful claim "**brought in tandem with** a successful . . . claim.") (emphasis added).  As a result, the courts found that the plaintiffs were entitled to recover fees incurred in developing both the successful and related unsuccessful claims.

In this case, though, we have a procedural hiccup that allows us to separate the attorney time spent on successful claims against Dieter and Sawdon from that the time spent on the related, but ultimately unsuccessful, subsequent claim against Moffa.  The initial trial concluded on May 9, 2002 with a finding of liability as to Dieter and Sawdon, but a mistrial as to Moffa.

13

That is, as of May 9, 2002, the Plaintiff had successfully concluded their claims against Dieter and Sawdon with a $56 million judgment, but not yet resolved their claims against Moffa. Under the rationale of *Hensley*, the time devoted to the related claims against Dieter, Sawdon, and Moffa clearly cannot be divided prior to May 9, 2002. However, upon the entry of judgment on May 9, 2002, a separation is created. Time spent after May 9, 2002 (with some exceptions set forth below) was spent primarily on the Moffa retrial with only minimal time spent on claims against Dieter and Sawdon. Moreover, we do not see how the Plaintiff's choice to continue to pursue its claims against Moffa in any way advanced the ball in its case against Dieter and Sawdon. It couldn't have; that case was nearly complete.

      A thorough review of the federal caselaw demonstrates that this is a unique situation. Here, we have related claims, but we have different defendants. The procedural posture in this case allows us to cleanly divide the attorney time spent on the successful claims against two defendants against the attorney time spent on the related unsuccessful claim against the third defendant. Further, the retrial of related claims against the third defendant (Moffa) did not contribute in any way to the success of the Plaintiffs as to the other related claims because there was already a finding of liability as to those defendants.

      We do not read *Hensley* or *City of Riverside* to always require a complete award of attorneys fees for every single related claim. Instead, *Hensley* and *City of Riverside* merely require this result where the claims are not reasonably separable and that attorney work on one claim necessarily aids the plaintiff's case as to other related claims. That is, prior to May 9, 2002, we clearly must award Plaintiffs the full time allotted to the related claims against Dieter, Sawdon, and Moffa because there is no separation between these related claims. However, we see no reason to tax Dieter and Sawdon for Plaintiffs' attorneys' fees of the unsuccessful Moffa retrial.

Nevertheless, we note that Plaintiffs did spend additional time after May 9, 2002 defending their successful claims against Defendants Dieter and Sawdon. In particular, there are two time periods after May 9, 2002 where Plaintiffs' counsel worked on the claims against Dieter and Sawdon at the same time as other claims.

First, immediately after the entry of judgment (and at least through June 21, 2002) the Plaintiffs prepared their initial request for attorneys fees and costs, reviewed objections to those petitions, and attended court proceedings regarding the same. On October 7, 2002, Judge Sharp entered an order delaying any further determination of attorneys fees until all proceedings in the district court were complete. [Doc. 290]. Further, our review of the docket and the (cursory) billing descriptions submitted by the Plaintiffs demonstrates that the Court's attention was not completely turned to the claims against Moffa until at least November 12, 2002 when the Court of Appeals issued its mandate dismissing some premature appeals and Judge Sharp began to address the practical issues of conducting the Moffa retrial. Accordingly, in fairness to Plaintiffs, we will include the attorney time spent up until November 12, 2002 because the vast portion of this time was clearly spent in furtherance of the Plaintiffs' case against Dieter and Sawdon.

Second, on November 25, 2003, the Court denied the Plaintiffs' Motion for a New Trial relating to the Moffa retrial. [Doc. 434]. It is evident from the billing records that only then did the Plaintiffs' attorneys meaningfully turn their attention to the cross appeals – their own appeal of Judge Sharp's grant of summary judgment to Sheriff Speybroeck and Sawdon and Dieter's appeal of the $56 million judgment from the first trial. Ultimately, both parties lost their appeals when the Seventh Circuit affirmed the jury verdict against Dieter and Sawdon and affirmed Judge Sharp's grant of summary judgment as to Sheriff Speybroeck. Here, our review of the billing records convinces us that it is practically impossible to separate attorney time expended on the successful defense of Dieter and Sawdon's appeal from the unsuccessful appeal

of the Speybroeck summary judgment. Accordingly, we decline to attempt to parse out hours spent on the Speybroeck appeal.

In summary, then, we find that the hours reasonably taxable to Defendants Dieter and Sawdon include that time incurred from the start of the case until November 12, 2002 and then again from the date the Court denied the Plaintiffs' Motion for a new trial in the Moffa retrial matter, November 25, 2003. The time in between – from November 12, 2002 to November 25, 2003 – was spent by the Plaintiffs' attorney in the unsuccessful retrial of Moffa which did not contribute in any way to the favorable results against Sawdon and Dieter.

**C.    Lodestar Summary**

Prior to discussing the *Hensley* factors, we summarize our final lodestar figure. Turning first to the time prior to June 21, 2002 – the time covered by Plaintiffs first fee petitions, the Plaintiffs submitted clear evidence of the hours each attorney worked. FFKJ submitted particularly useful time sheets that named each attorney, described each task that attorney performed, and recorded the amount of time (in 1/4 hour increments). Attys. Drew and Marrs submitted time sheets as well. These documents support the hours requested by each attorney. Moreover, Defendants Dieter and Sawdon did not object to the number of hours requested during this time period. [Doc. 289]. Accordingly, we award attorneys fees for the period of time from the initiation of this matter through June 21, 2002 as follows:[5]

---

[5]Plaintiffs did not submit any time for Atty. "VSV" during this timeframe.

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Geoffrey Fieger | $400 | 288.65 | $ 115,460.00 |
| Jeremiah Kenney | $400 | 111.3 | $ 44,520.00 |
| Sean Drew | $350 | 806.75 | $ 282,362.50 |
| Michael Marrs | $400 | 95.75 | $38,300.00 |
| Steve Hnat | $100 | 178 | $ 17,800.00 |
| Tania Kushner | $50 | 182.25 | $ 9,112.50 |
| | | **TOTAL** | **$507,555.00** |

Next, we calculate the attorneys fees generated between June 21, 2002 and November 11, 2002 and then again from November 25, 2003 to the present (the "Relevant Period"). Beginning with Atty. Drew, Plaintiffs have submitted evidence of the fees accrued in Exhibits B and C.[6] To arrive at the hours worked for this calculation, the Court reviewed these Exhibits and included in its calculation all hours worked during the Relevant Period. Exhibit B evidenced 103 hours worked during the Relevant Period and Exhibit C evidenced 137.5 hours worked during the Relevant Period for a total of 240.5 hours.

Next, we turn to the hours accrued by FFKJ. FFKJ submitted time sheets as Exhibit D to the Supplemental Request. Here, the time sheets reveal that Atty. Fieger worked 15 hours during the Relevant Period and "VSV" worked 154.25 hours during the Relevant Period.

---

[6]Plaintiffs also suggest they have submitted evidence of time spent by Atty. Drew in Exhibit A. However, this Exhibit is merely a duplicate of Exhibit E which Plaintiffs claim demonstrates the costs incurred by Atty. Drew. We will not double count these amounts and include them only in our separate "costs" analysis.

17

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Sean Drew | $350 | 240.5 | $84,175.00 |
| Geoffrey Fieger | $400 | 15 | $6,020.00 |
| "VSV" | $233 | 154.25 | $35,940.25 |
| | | **TOTAL** | **$126,135.25** |

At last, when we add both time periods together, we arrive at a final lodestar amount of $633,690.25.

**D.    Analysis of the Hensley Factors**

Having now arrived at what we consider a reasonable lodestar amount, we now have discretion to adjust the award up or down in light of the *Hensley* factors.  These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Estate of Borst*, 979 F. 2d at 516 n.2.  It is appropriate to consider these factors even after modifying the lodestar as we have done in this case.  *Id*. at 516.

In this case, there are a number of factors that weigh in favor of an upward adjustment of the lodestar figure.  First, and most importantly, the degree of success that the attorneys obtained for Plaintiffs is no less than exceptional.  Not only is the $56 million judgment against Dieter and Sawdon the largest in Indiana History, *see* Nick Upmeyer, *$56.5 Million for Death in Drunk Tank*, 24 NAT'L L.J., May 20, 2002 at B1, but the verdict is larger than the amount initially requested against all of the defendants combined.  In their initial complaint, the Plaintiffs

18

requested $25 million plus punitive damages against all of the original defendants combined. In the end, however, they received a $56 million award for the actions of two defendants. This is an excellent result.[7]

Moreover, the value of this award goes way beyond money. The vindication of important constitutional rights is a factor that must be considered. As the Seventh Circuit has noted:

> a judicial decision that finds a violation of constitutional rights and punishes the perpetrator with an award of punitive damages not only vindicates constitutional principles but is a deterrent to future violations, to the benefit not only of the plaintiff but of others in similar situations.

*Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988). Here, the Plaintiffs have sent a significant message to law enforcement officials. There can be no doubt that Moreland suffered the greatest abuse possible at the hands of police when they restrained him, beat him, denied him medical attention and, ultimately, killed him. Originally detained for driving under the influence and obviously inebriated, Moreland was virtually helpless against the defendant's attacks. The verdict in this case sends a teaches law enforcement that reprehensible behavior will be punished severely. In an era where civil attorneys amass millions in fees in commercial disputes, we find it especially important to properly compensate those who take on the work of defending constitutional rights.

---

[7] This Court's survey of civil rights litigation in the Seventh Circuit demonstrates that verdicts are often substantially smaller. *See, e.g., Woodward v. Correctional Med. Servs. of Illinois*, 368 F. 3d 910 (7th Cir. 2004) ($1.75 million verdict to estate of pretrial detainee who committed suicide while in pretrial detention); *Jaffe v. Redmond*, 142 F.3d 409 (7th Cir. 1998) (jury awards of $645,000.00 total over two trials to estate of man shot and killed by police officers).

Moreover, we recognize that the Plaintiffs' counsel has spent an inordinate amount of time on this matter. Hundreds of hours worked over eight years certainly demonstrates a dedication to the case. This is particularly true because all counsel in this matter worked on a contingent fee basis. As such, they fronted their own money and sweat to a case where there was a chance that they would receive no compensation at all. While the inherent risk of contingent fee litigation alone is not a sufficient reason to award an upward adjustment, *see Eirhart v. Libbey-Owens-Ford Company*, 996 F.2d 846, 852 (7th Cir. 1993) (striking down the application of a contingency multiplier in a Title VII fee award), we believe that the risk of the contingency contract coupled with 1) the societal value of civil rights litigation; and 2) the 8-year dedication of attorneys in this matter militates in favor of a multiplier.

For these reasons, we award a 25% multiplier to Plaintiffs in this matter. We, therefore, increase the Plaintiffs' award by $158,422.56 and arrive at a total award of $ 792,112.56.

### III. CONCLUSION

Accordingly, it is hereby ordered that Defendants Erich Dieter and Michael Sawdon shall pay to Plaintiffs attorneys fees in the amount of **$792,112.56.**

**SO ORDERED.**

ENTERED: September 27, 2005

                                                s/ Philip P. Simon
                                                PHILIP P. SIMON, JUDGE
                                                UNITED STATES DISTRICT COURT