UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ESTATE OF CHRISTOPHER A. MORELAND, *et al.*, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) NO. 3:99-cv-607PS |
| MICHAEL E. SAWDON and ERICH DIETER, | ) ) ) |
| Judgment Defendants, | ) ) |
| and | ) ) |
| ST. JOSEPH COUNTY, INDIANA, et al., | ) ) |
| Third-Party Defendants. | ) |

**OPINION AND ORDER**

Christopher Moreland was beat mercilessly at the St. Joseph County Jail by two guards, and he later died as a result of the attack.  Although the two guards were acquitted of federal criminal civil rights violations, a subsequent civil trial led to a $56.5 million verdict against them which was later affirmed on appeal. Moreland's estate now seeks a writ of garnishment and/or attachment against St. Joseph County and its Board of Commissioners to enforce the compensatory judgments against Defendants Sawdon and Dieter, the two guards who administered the beating to Moreland. [DE 497.]   Plaintiff asserts that the Indiana Tort Claims Act, as amended after the trial of Sawdon and Dieter but prior to their appeal, now provides for the County's obligation to indemnify Sawdon and Dieter for the compensatory judgments rendered against them.   But because the statute was not triggered upon the appeals taken by Sawdon and Dieter, and because the statute is not retroactive, the Motion to Enforce Judgment is denied.

**BACKGROUND**

The gruesome facts surrounding Moreland's detention and death need not be detailed as they are well-documented in this case. *See Estate of Moreland v. Dieter*, 395 F. 3d 747 (7th Cir. 2005). However, a review of the procedural and appellate history of this case is necessary for the resolution of the pending motion to enforce judgment.

A.   **Procedural History**

The Plaintiff, the estate of Christopher Moreland, originally brought its complaint in October of 1999 alleging violations of 42 U.S.C. § 1983 against Michael Sawdon, Erich Dieter, and Paul Moffa – each one a St. Joseph County police officer; Joseph Speybroeck, the then Sheriff of St. Joseph County; the St. Joseph County Sheriff's Police Department; various St. Joseph County Commissioners and County Council members; and various medical providers. The majority of the defendants ultimately settled or were dismissed upon voluntary dismissal or summary judgment. Defendants Dieter, Sawdon, and Moffa all went to trial. Plaintiff's claims against those three individuals were relatively similar. They alleged that each officer used excessive force on Moreland while he was in custody at the St. Joseph County Jail on a drunk driving charge.

On April 21, 2002, the case proceeded to a jury trial before Judge Sharp against Sawdon, Dieter, and Moffa. The jury returned verdicts against Sawdon and Dieter, and reported that it was deadlocked as to the claims against Moffa. Consequently, Judge Sharp granted a mistrial as to Moffa. The jury then considered the issue of damages against Sawdon and Dieter. Following two days of testimony and deliberations, the jury returned a verdict against Sawdon and Dieter in the amount of $29 million compensatory damages, $12.5 million in punitive damages against Dieter, and $15 million in punitive damages against Sawdon for a total sum of $56.5 million.

On May 9, 2002, judgment was entered on the verdict against Sawdon and Dieter.

On June 24, 2003, the matter was re-assigned to me for all further proceedings, including the Moffa re-trial which commenced on September 9, 2003. The jury returned a verdict in favor of Moffa and against the Plaintiff, and the clerk entered judgment on September 18, 2003. Plaintiff filed a motion for a new trial but that was denied.

After the Moffa re-trial was concluded and all motions ruled on, Defendants Sawdon and Dieter appealed the judgment against them alleging evidentiary errors and also challenging the size of the punitive damage awards. Plaintiff cross-appealed the grant of summary judgment to the County. On January 14, 2005, the Seventh Circuit affirmed on all grounds. *Estate of Moreland v. Dieter*, 395 F. 3d 747 (7th Cir. 2005).

**B.     Indiana Tort Claims Act and the Payment of Defense**

On July 1, 2003, the Indiana legislature amended a statute dealing with indemnification of government employee. That statute – Indiana Code Section 34-13-4-1 – now provides:

> If a present or former public employee, including a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity, is or could be subject to personal civil liability for a loss occurring because of a noncriminal act or omission within the scope of the public employee's employment which violates the civil rights laws of the United States, the governmental entity (**when the governmental entity defends or has the opportunity to defend the public employee**) shall, subject to IC 34-13-3-4, IC 34-13-3-14, IC 34-13-3-15, and IC 34-13-3-16, pay:
>
> (1) any judgment (other than for punitive damages) of the claim or suit; or
>
> (2) any judgment for punitive damages, compromise, or settlement of the claim or suit if:
>
> (A) the governor, in the case of a claim or suit against a state employee; or
>
> (B) the governing body of the political subdivision, in the case of a claim or suit against an employee of a political subdivision;
>
> determines that paying the judgment for punitive damages, compromise, or settlement is in the best interest of the governmental entity. The governmental entity shall also pay all costs and fees incurred by or on

>behalf of a public employee in defense of the claim or suit.
>(emphasis added).

The amendment introduced a change from the previous statute with respect to the language triggering indemnification responsibility on the part of the government entity. The previous version of § 34-13-4-1 gave the governing body of the political subdivision discretion as to whether the government entity shall pay the judgment. The former version of the statute pivoted not on whether the government provided a defense for the individuals, but on whether the governing body determined that paying the judgment was "in the best interest of the governmental entity." Ind. Code § 33-13-4-1 (P.L.1-1998 § 8).

Sawdon and Dieter were represented by Martin Kus and his fees were paid for by the County through the first trial. *See* Mem. in Opp. to Mot. to Enforce Judgment, Attachment 1, April 1, 2002 Corr. fr. J. Groves to M. Kus and J. Korpal [DE 500-1]. The County also paid for the defense of Sheriff Speybroek, who was sued in his official and individual capacity and represented by a different attorney. *See id.* Judge Sharp granted summary judgment to Sheriff Speybroek and the Sheriff's Department on March 20, 2002. On April 1, 2002, the County informed Kus that it would only continue to pay for the defense of Sawdon and Dieter "through the time of final verdict." *Id.*

The County's April 1, 2002 letter to Kus explained that the County had initially decided to pay for the defense of Sawdon and Dieter "in the interest of maintaining consistency" with respect to the defense of Sheriff Speybroeck and would continue to pay through the final verdict "in the spirit of fairness and continuity of a consistent defense." *Id.* The last of the payments to Kus occurred on September 17, 2002, several months before the amendments to Indiana Code Section 34-13-4-1 became effective. *See* L. Hill Dep. Tr. at 5. The County paid for the defense of Defendant Moffa, represented by a different attorney, up through the end of his second trial

4

and entry of judgment on September 18, 2003. *See* Stipulation [DE 512].

On October 2, 2002, Kus wrote a letter to Sawdon and Dieter explaining that the County paid for trial fees but would not make any further contributions for appeal. *See* Mem. in Opp. to Mot. to Enforce Judgment, Attachment 1, Oct. 2, 2002 Corr. fr. M. Kus to E. Dieter and M. Sawdon [DE 500-1]. He also informed them that he would continue to represent them in their appeal, and he testified that he did so on a *pro bono* basis. *See id.*; M. Kus Dep. Tr. at 3.

## DISCUSSION

The Plaintiff seeks the issuance of writs of attachment and garnishment compelling the County to pay the compensatory portion of the judgment accrued against Defendants Sawdon and Dieter. Rule 69 of the Federal Rules of Civil Procedure states that a writ of execution is the proper mechanism for the enforcement of a money judgment "unless the court directs otherwise." Federal courts maintain ancillary jurisdiction in Rule 69 subsequent proceedings as a part of its power to enforce federal court judgments. *See Yang v. City of Chicago*, 137 F.3d 522, 525 (7th Cir. 1998). The Seventh Circuit has approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection of federal judgments-including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances. *Id.* (citing *Mackey v. Lanier Collection Agency & Serv.c, Inc.*, 486 U.S. 825, 834 n. 10 (1988); *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995)).

The *Yang* court explained that "a Rule 69 garnishment proceeding to collect a judgment from a third person not party to the original suit is within a court's ancillary jurisdiction, providing the additional proceeding does not inject so many new issues that it is functionally a separate case." 137 F.3d at 526 (citation and internal quotation marks omitted).

5

*Yang* is nearly factually identical to the present case. In *Yang*, the City of Chicago, as it is with the County here, argued that it was not required to indemnify a police officer who was found personally liable. The Seventh Circuit held that whether the City had to indemnify the officer did not create a separate issue necessitating that a new lawsuit be brought, *id.*, and so I have ancillary jurisdiction to determine whether a writ of attachment or garnishment against the County is appropriate.

### A.      The Appeal Pursued by Sawdon and Dieter Did Not Trigger Indemnification Under Indiana Law

The first issue presents a question of statutory interpretation. The pertinent part of the new Indiana public employee indemnification statute states that if an employee "violates the civil rights laws of the United States, the governmental entity (when the **governmental entity defends or has the opportunity to defend** the public employee) shall . . . pay (1) any judgment (other than for punitive damages) of the claim or suit." Ind. Code § 34-13-4-1 (emphasis added). Plaintiff first contends that Indiana Code Section 34-13-4-1 creates indemnification responsibilities for the County because the County had the "opportunity to defend" Sawdon and Dieter in their appeal after the statute was amended in July, 2003. Recall, however, that the County specifically told Sawdon and Dieter fifteen months before the passage of the new statute – in April, 2002 – that it would not defend them after the trial. Plaintiff's argument that the County had the "opportunity to defend" Sawdon and Dieter on appeal and therefore the County should be stuck with paying the massive judgment, is an implausible reading of the statute.

The statute's use of the word "defends" implies that actual action must be taken before indemnification duties arise through the provision of and payment for attorneys to represent the employees during their defense. On the other hand, "opportunity to defend" implies that something less active is required on the part of the governmental entity before it must pay a

6

money judgment rendered against an employee.

Plaintiff suggests that the government's liability is triggered whenever it is put on notice of the employee's action and thereby given an "opportunity to defend." The fundamental problem with this interpretation is that by ascribing importance only to the phrase "opportunity to defend," the immediately preceding word "defends" is rendered meaningless. This would reduce the word to mere surplusage, and would be at odds with a basic canon of statutory interpretation. *United States v. Senn*, 129 F.3d 886, 895 (7th Cir. 1997).

Of course, one might argue that focusing on the word "defends" at the expense of "opportunity to defend" reaches the same result. However, I can posit a meaning to the sentence as a whole so that both phrases have importance in the context of the rest of statute. The word "defends" must be intended to cover the situations where the government entity pays for or otherwise provides for the defense of its public employees in the form of trial preparation, pre-trial court appearances and trial. "Opportunity to defend," on the other hand, may likely have been placed in the statute to make clear that the government is also responsible when the parties reach settlement, even if the lawyer never entered an appearance, found his way into a courtroom, drafted a brief, or in any other way "defended" the employee in actual litigation.

Indeed, both situations – representation by an attorney during litigation and representation before litigation has been commenced – are envisioned by the statute's drafters. The provisions immediately following the "defends or has the opportunity to defend" introductory parenthetical demonstrate this. Provision (1) involves "any judgment (other than for punitive damages) of the claim or suit." Under any situation triggered by this first situation, the government would unambiguously express its decision as to whether it was defending the employees or not, as they would have been involved in the official proceedings leading up to the

7

judgment.  Provision (2), in contrast, involves "any . . . *compromise, or settlement*." (emphasis added).  The government could theoretically provide the attorneys who facilitate a settlement or compromise, but never officially provide a "defense" – at least under the commonly understood meaning of that term.  Thus, the words "opportunity to defend" were likely included to ensure that the statute covered all forms of claim termination that triggered its implementation.  This reading is consistent with the Indiana courts' distinction between the concepts of "judgment" and "settlement" when interpreting indemnification provisions.  *See e.g., Bell v. Commonwealth Land Title Ins. Co.,* 494 N.E.2d 997, 1001 (Ind. Ct. App. 1986)(holding that settlement and dismissal did not constitute a judgment for purposes of interpreting parties' indemnity agreement).

Plaintiff's interpretation would not only cause the word "defends" to be meaningless, but would run contrary to the stated aims of the Indiana Tort Claims Act.  "The legislative purpose of the Tort Claims Act was to limit the financial responsibility of the state by restricting damages in tort in order to protect the fiscal integrity of governmental bodies."  *In re Train Collision at Gary, Ind. on Jan. 18, 1993*, 654 N.E.2d 1137, 1146 (Ind. Ct. App. 1995)(citing *Board of Commr's of Hendricks County v. King*, 481 N.E.2d. 1327, 1330 (Ind. Ct. App. 1330).  By reading the statute to apply to any situation where the public entity had the "opportunity to defend" regardless of whether it specifically chooses to take on the defense, the Court would open the floodgates to ongoing state indemnity obligations.  There is no indication in the statute, or from the Indiana courts, that the legislature amended the law to create this large of a "sea change" (as the Plaintiff labels it) in the statutory scheme.  The former rule gave complete discretion to the government entity, so long as it determined that the payment of any judgment was in that entity's best interest.  The amended statute still gives the government entity the

8

chance to avoid financial responsibility.  But if the entity chooses to defend the employee, then when they're in for a dime, they're in for a dollar.

This is not like the situation where an insurer is required to indemnify the insured so long as it is put on notice and given the "opportunity" to provide a defense.  *See e.g. The Hartford Accident and Indem. Co. v. Gulf Ins. Co.*, 837 F.2d 767, 769 (7th Cir. 1988)("Timely tender is what gives the insurer an 'opportunity to defend.'"); *Allstate Indem. Co. v. Brown*, 696 N.E.2d 92, 95-96 (Ind. Ct. App. 1998).  An insurer/insured relationship, is a far different situation than the relationship between government entities and their public employees.  While the former is a contractual arrangement entered into primarily for the purpose of indemnification of losses, the latter relationship is formed to aid in the performance of required public services and to obtain employment.  There is no reason to assume that the Indiana legislature expected or desired the public entity to take on the role of automatic insurer, especially absent any specific language from the legislature to that effect.

Moreover, there is no question that if the Indiana legislature desired to hinge the question of government responsibility for civil claims on the receipt of proper notice, it knew how to include such language in its statutes.  For instance, a separate provision of the Indiana Tort Claims Act,  Indiana Code Section 34-13-3-5(d), states: "This subsection applies when the governmental entity defends *or has received proper legal notice* and has the opportunity to defend an employee for losses resulting from the employee's acts or omissions." (emphasis added).  In contrast, there is no mention of legal notice in Indiana Code Section 34-13-4-1, the statute at issue here.  As such, the Court will not assume that it somehow exists or is implied in the phrase "opportunity to defend."

**B.     The County's Defense of Moffa in His Re-trial Does Not Bind it**

Plaintiff contends that the fact that the County continued to provide for the defense of Moffa during his re-trial (and after the statute's amendment) should somehow inure to its benefit in holding the County responsible for the judgment against Sawdon and Dieter.  But the County's decision to take on indemnification responsibilities by defending Moffa after the date of the amended statute does not mean that it intended to assume similar responsibilities for Sawdon and Dieter.  The County may well have chosen to defend Moffa because he was less culpable than Sawdon and Dieter.  After all, Moffa was not charged criminally, and Moffa prevailed in the second civil trial.  Whatever its motivation, it was the County's prerogative to differentiate between Moffa on the one hand and Sawdon and Dieter on the other. And a decision to pay for Moffa's defense certainly did not somehow bind the County to indemnify the other two.  The Plaintiff cites nothing that would compel an opposite result from this commonsense proposition.

**C.     Indiana Code Section 34-13-4-1 Should Not Be Applied Retroactively**

The next issue is whether Indiana Code Section 34-13-4-1 should be applied retroactively.  All parties agree that the County did pay for the defense of Sawdon and Dieter during the trial and prior to the amendment of Indiana Code Section 34-13-4-1.  If the statute applies retroactively, the County will be responsible for indemnification.  It's worth noting that even if I were to apply the statute retroactively, the County would not be on the hook for the multi-million dollar verdict that was handed down. Recall that the indemnification requirement in the new statute is specifically "subject to IC 34-13-3-4 . . ." *See* Ind. Code § 34-13-4-1.  And Indiana Code § 34-13-3-4 limits the County's liability to $300,000. *See Gibson v. Gary Housing Authority*, 754 F.2d 205, 207-08 (7th Cir. 1985)(reducing $2,000,000 negligence judgment

10

against federally regulated and subsidized housing authority to $300,000); *Town of Montezuma v. Downs*, 685 N.E. 2d 108, 119 (Ind. Ct. App. 1997).  In any event, I find that there is no indication that the Indiana legislature had any intention that the indemnification statute be applied retroactively. Accordingly, Plaintiff's request in that regard is rejected.

Both in Indiana, and in this circuit as well, there is a general rule against applying statutes retroactively unless there is a compelling reason to do so.  *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005) ; *Killinsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 620 (7th Cir. 2007).  It is true that on occasion courts have treated remedial statutes as an exception to the general rule against retrospective application. But the exception for remedial statutes is limited. "Not all remedial statutes are automatically applied retroactively.  It has long been the law in this jurisdiction that although statutes and rules concerning procedural and remedial matters *may* be made to operate retroactively, it is not the case that they *must* apply retroactively." *Pelley*, 828 N.E.2d at 919 (emphasis in original)(citing *State ex rel. Uzelac v. Lake Crim. Ct.*, 212 N.E.2d 21, 24 (Ind. 1965); *see also Walsman v. State*, 855 N.E.2d 645, 650 (Ind. Ct. App. 2006); *Brown v. Delaney*, 840 N.E.2d 6, 10 (Ind. Ct. App. 2005).

But labels are unhelpful.  That is why Indiana courts hold that it is the underlying purpose of the statute – not its characterization as "remedial" – that is the key to the determination of whether to apply remedial statutes retrospectively.  "When a remedial statute is involved, a court must construe it to 'effect the evident purpose for which it was enacted [.]'" *Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002)(quoting *Conn. Mut. Life Ins. Co. v. Talbot*, 14 N.E. 586, 589 (1887).  "Accordingly, remedial statutes will be applied retroactively to carry out their legislative purpose unless to do so violates a vested right or constitutional guaranty." *Pelley*, 828 N.E.2d at 919.

11

Here, the legislative purpose of Indiana Code Section 34-13-4-1 would not be effectuated with retroactive application. At least a sizeable part of the amended statute's purpose was to grant the government a choice as to whether it would provide its employees with a defense, and thereby take on indemnification risks. Otherwise, the legislature need not have bothered to put the "defends" parenthetical in the statute at all. Under the old statute, the government could defend an employee and then abandon him after an adverse verdict was rendered, leaving the employee to pay the judgment. Under the new statute, the Indiana legislature has changed the dynamics by requiring the government to choose whether it wants to take the risk of paying those judgments before it decides to provide a defense. But by applying the statute retroactively, Plaintiff would deprive the government of the chance to weigh and balance those factors before taking action. Instead, the choice would be made for it – by me, nearly nine years after the case was filed. That's an odd result since "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994). The Indiana Supreme Court has noted that the *Landgraf* analysis is consistent with Indiana law. *Kimberlin v. Delong*, 637 N.E.2d 121, 125, n. 3 (Ind. 1994).

Another implied purpose of the amendment is to provide the employees with certainty from the beginning of their cases in knowing that if the government is providing their defense, it will not leave them holding the bag as soon as a possible negative outcome becomes likely. Retroactive application of the statute in this case will not help carry out this purpose since the statute was amended after the judgment was entered and Sawdon and Dieter were told they would be on their own after the trial. In sum, there is no "strong and compelling reason" in this

case to deviate from the general rule of prospective application. *See Gosnell v. Ind. Soft Water Serv., Inc.*, 503 N.E. 2d 879, 880 (Ind. 1987)(superceded by statute on other grounds); *see also Sack v. Estate of Hubbell*, 613 N.E.2d 868, 869 (Ind. Ct. App. 1993).

In fact, there is only reason to do otherwise. For starters, there is no language found in the statute or the legislative history directing retroactive application. And when the Indiana legislature wants to make statutes retroactive it does so explicitly. *See Ind. Family and Soc. Servs. Admin v. Hospitality House of Bedford*, 704 N.E.2d 1050, 1063, n. 11 (Ind. Ct. App. 1998)(noting express retroactive language found in Indiana Medicaid reimbursement regulation); *Ind. Dept. of Envtl. Mgmt. v. Chem. Waste Mgmt. of Ind.*, 604 N.E.2d 1199, 1205 (Ind. Ct. App. 1992)(noting express retroactive language found in landfill operation financial statement law); *Matter of Estate of Edwards*, 562 N.E.2d 763, 767 (Ind. Ct. App. 1990)(noting express retroactive language found in paternity establishment law).

In addition, *Landgraf* specifically provided that "introducing damages liability" is not the sort of remedial statute that should be excluded from the rule against retroactive operation. 511 U.S. at 285, n. 37. The Supreme Court pointed to the fact that courts have consistently denied retroactive application of laws changing, for example, damage amounts available in wrongful-death actions. *See Landgraf*, 511 U.S. at 285, n. 37. Here, the County's decision to defend Sawdon and Dieter occurred before the statute's enactment, and, if applied retroactively, would impose significant consequences with respect to County's financial liabilities, and would disrupt settled expectations.

The Seventh Circuit made the same point more than fifty years ago in *Herrick v. Sayler*, 245 F.2d 171, 174 (7th Cir. 1957). In that case the court addressed the question of whether to give retroactive operation to a statute amended to increase the amount recoverable in a wrongful

13

death suit. After noting that the prospective-only rule carries a limited exception for remedial statutes, the court examined other jurisdictions tackling similar questions of "whether retroactive operation will be given a statute so as to affect an existing liability to the detriment of the defendant." *Id*. The court found that "statutes increasing liability have been denied retrospective application," and consequently followed suit. *Id*.; *see also Western Smelting & Metals, Inc. v. Slater Steel, Inc.*, 621 F.Supp 578, 585 (N.D. Ind. 1985); *Stewart v. Marson Construction Corp.*, 191 N.E.2d 320, 321 (Ind. 1963). So it is here where the retroactive operation of the statute would not only increase the County's liability – but would create that liability. This would be an especially odd result given the fact that the County prevailed on summary judgment.

Finally, as Plaintiff conceded in oral argument, a ruling for the retroactive operation of Indiana Code Section 34-13-4-1 in this case would have significant impact for more than just St. Joseph County's indemnification obligations towards Sawdon and Dieter. Retroactive application would open the way for all previous judgments handed down against employees defended by government entities under the former version of the statute. Plaintiff argues that this consequence would be limited by the statute of limitations on the satisfaction of judgments, but even so acknowledges that it would not serve to bar the pursuit of judgments entered within the last twenty years. Ind.Code § 34-11-2-12. If the legislature wanted to make government entities responsible for judgments from the *last twenty years*, I am reasonably certain it would have included unambiguous language making clear that intention.

Nothing in *Dep't of Public Welfare of Allen County v. Potthoff*, 44 N.E.2d 494 (Ind. 1942) commands a different result. In that case, the Indiana Supreme Court addressed the retroactivity of an amended public welfare statute. Under the old statute, liens were attached to property for amounts individuals received from the state in the form of old-age assistance

14

payments. *Id*. at 495.  The amended statute did not create any liens. *Id*. at 496.  The court found that the act could apply retroactively so as to prevent the recovery of old-age payments paid under the previous statute.  *Id*. at 498.  But the *Potthoff* court looked to the legislative history of the new statute to determine whether the legislature intended it to operate retroactively.  *Id*.  It found a prior, rejected, version of the bill that specifically preserved the liens issued under the former act.  *Id*.  Because that language of the bill was stricken from the ultimate law, the retroactive construction which resulted in the removal of the liens was seen to be consistent with the act's purpose.  *Id*. Indiana Code Section 34-13-4-1 presents no such dispositive legislative history, and as shown above, the apparent purpose of the statute is not "carried out" through retroactive application.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Ancillary Enforcement of Judgment Against St. Joseph County and/or its Board of Commissioners [DE 497] is **DENIED.**

**SO ORDERED**.

ENTERED: February 7, 2008

/s Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

15